JACQUES GILBERT, Appellant, *v.* HENRY C. BURNSTINE et al., Individually and as Copartners under the Firm Name of BURNSTINE & GEIST, Respondents.

(Argued October 21, 1930; decided January 13, 1931.)

*Eugene Untermyer, Laurence A. Steinhardt* and *Herbert B. Claster* for appellant. The defendants have voluntarily agreed to be governed by the British law and to submit the differences in controversy to the British arbitration tribunal. The defendants are, therefore, bound by the award rendered thereon as in any other instance of a judgment or award rendered by default. (*Norske Atlas Ins. Co.* v. *London General Ins. Co.*, 43 Times Law Rep. 541; *Oppenheim & Co.* v. *Haneef Sahib*, [1922] 1 App. Cas. 482; *Matter of Berkowitz* v. *Arbib*, 230 N. Y. 261; *Mitsubishi Goshi Kaishi* v. *Carstens Packing Co.*, 200 Pac. Rep. 327; *Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388; *Finsilver* v. *Goldberg*, 253 N. Y. 382; *Miller* v. *Smith*, L. R. [1916] K. B. Div. 419; *Hamlyn* v. *Bettely*, 6 Q. B. 63.) Ample personal jurisdiction was secured over the defendants by service in the State of New York because the defendants agreed in advance to that method of service. (*Finsilver* v. *Goldberg*, 253 N. Y. 387; *Elmendorf* v. *Harris*, 23 Wend. 628; *Wilson* v. *Seligman*, 144 U. S. 41; *Pennoyer* v. *Neff*, 95 U. S. 714; *Kerr* v. *Tagliavia*, 101 Misc. Rep. 614; 186 App. Div. 893; 229 N. Y. 542; 254 U. S. 645; *Feyerick* v. *Hubbard*, 71 L. J. [N. S.] K. B. Div. 509; *Copin* v. *Adamson*, L. R. 9 Exch. 345; *Roussillon* v. *Roussillon*, 14 Ch. Div. 351; *Teel* v. *Yost*, 128 N. Y. 387; *Tatum* v. *Maloney*, 226 App. Div. 62; *Guggenheim* v. *Wahl*, 203 N. Y. 390; *Vose* v. *Cockcroft*, 44 N. Y. 415; *Conde* v. *Schenectady*, 164 N. Y. 258; *Murdock* v. *Cincinnati*, 44 Fed. Rep. 726; *Matter of Teannakopoulos*, 195 App. Div. 261.)

*Julius Henry Cohen, Kenneth Dayton, Burton A. Zorn* and *George H. Kenny* for Corporation of the Chamber of

Commerce of the State of New York *et al.*, *amici curiæ.*
Although the notices from the plaintiff and arbitrator, and
a summons from an English court relating to the appoint-
ment of an arbitrator were served upon defendants only
in New York, but in full compliance with the provisions
of English law, they are binding on defendants. (*Matter
of Berkovitz v. Arbib*, 230 N. Y. 261; *Schibsby v. Westen-
holz*, L. R. 6 Q. B. 155; *Rousillon v. Rousillon*, 49 L. J. R.
[N. S.] Eq. 338; *Feyerick v. Hubbard*, 71 L. J. R. [N. S.]
K. B. 509; *Vallee v. Dumergue*, 4 Exch. 290; *Teel v.
Yost*, 128 N. Y. 387; *Mayer v. Raudenbush*, 217 N. Y.
633; *Albert Building & Loan Assn. v. Newman*, 130 Misc.
Rep. 624; *Grover & Baker Sewing Machine Co. v. Radcliffe*,
137 U. S. 287; *Finsilver v. Goldberg*, 253 N. Y. 382; *Liver-
pool M. & G. Ins. Co. v. Bankers & Shippers Ins. Co.*, 24
Ll. L. Rep. 85; *Copin v. Adamson*, L. R. 9 Exch. 345;
45 L. J. R. [N. S.] Exch. 15; *Merrifield, Ziegler & Co. v.
Liverpool Cotton Assn.*, 105 T. L. R. 97; *Norske Atlas Ins.
Co. v. London General Ins. Co.*, 43 T. L. R. 541; *Hamlyn &
Co. v. Talisker Distillery*, L. R. [1894] A. C. 202; *Law v.
Garrett*, L. R. [1878] 8 Ch. Div. 26; *Kirchner & Co. v.
Gruban*, L. R. [1909] 1 Ch. Div. 413; *Austrian Lloyd S. S.
Co. v. Gresham Life Assur. Soc.*, L. R. [1903] 1 K. B.
249; *The Cap Blanco*, L. R. [1913] Prob. Div. 130; *Penn
Copper Mines v. Rio Tinto Co.*, 105 T. L. R. 846; *The
Dawlish*, [1910] Prob. Div. 339.) The defendants agreed
that the process of the English court necessary to
the effectuation of the arbitration agreement might
be served upon them in New York and that they would
thereby come within the jurisdiction of the English court.
(*Grover & Baker Sewing Machine Co. v. Radcliffe*, 137
U. S. 287; *Willesford v. Watson*, L. R. 8 Ch. 473;
*Matter of Wenger & Co. v. Propper Silk Hosiery Mills*,
239 N. Y. 199; *Matter of American Eagle Fire Ins. Co. v.
N. J. Ins. Co.*, 240 N. Y. 398; *Matter of Interocean Mer-
cantile Corp.*, 204 App. Div. 284.) The public policy of
the State should support the effectuation of this agree-

ment. (*Atlantic Fruit Co.* v. *Red Cross Line*, 5 Fed. Rep. [2d] 218.)

*Henry C. Burnstine* for respondents. A party is bound by the result of an arbitration not because he agrees to arbitrate but because he does arbitrate, either actually, whether voluntarily or involuntarily, or in legal effect, because ordered so to do by a power to which he is amenable. His refusal to arbitrate is final, unless changed by the compelling force of such power as alone can compel him because of his amenability to it, and its proper exercise to that end. (*Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388; *Wilson* v. *Winchester & P. R. Co.*, 82 Fed. Rep. 15; *Ackerman* v. *Berriman*, 61 Misc. Rep. 165; *Matter of Berkovitz* v. *Arbib*, 230 N. Y. 261; *Mitsubishi Goshi Kaishi* v. *Carstens Packing Co.*, 200 Pac. Rep. 327; *Norske Atlas Ins. Co.* v. *London General Ins. Co.*, 43 Times Law Rep. 541; *Oppenheim & Co.* v. *Haneef Sahib*, 1 App. Cas. 482; *Matter of Eyre & Leicester Corp.*, [1892] 1 Q. B. 136; *Hamlyn* v. *Betterly*, 6 Q. B. 63; *Matter of Smith & Service & Nelson & Sons*, [1890] 25 Q. B. D. 545; *Doleman* v. *Ossett Corp.*, 3 K. B. 257; *People ex rel. Union Ins. Co.* v. *Nash*, 111 N. Y. 310; *Finucane Co.* v. *Board of Education*, 190 N. Y. 76; *Matter of Zimmerman* v. *Cohen*, 236 N. Y. 19.) No jurisdiction of defendants was secured by delivery to them in New York of what within British territory was British process, nor did defendants agree in advance that such method should constitute service upon them, and it could not have given jurisdiction had they so agreed. (*British Wagon Co.* v. *Gray*, [1896] 1 Q. B. 35; *Queen* v. *Justice of Essex*, [1895] 1 Q. B. 38; *Jones* v. *Owen*, 5 Dowl. & Lowndes, 669; *Foster* v. *Usherwood*, 37 L. T. 389; *Pennoyer* v. *Neff*, 95 U. S. 714; *D'Arcy* v. *Ketchum*, 11 How. 165; *Wilson* v. *Seligman*, 144 U. S. 41; *Teel* v. *Yost*, 128 N. Y. 387; *Schibsby* v. *Westenholz*, L. R. [6 Q. B.] 155; *Sudbury* v. *Ambi*, 213 App. Div. 98; *Kerr* v. *Tagliavia*, 101 Misc.

Rep. 614; 186 App. Div. 893; 229 N. Y. 542; 254 U. S. 645.) Agreements of our citizens to submit future disputes to foreign tribunals of all kinds are still against our public policy and void. (*Hilton* v. *Guyot,* 159 U. S. 113; *Johnston* v. *Compagnie Generale Trans-Atlantique,* 242 N. Y. 387; *Ritchie* v. *McMullen,* 159 U. S. 235; *Dunston* v. *Higgins,* 138 N. Y. 70; *Cowens* v. *Ticonderoga Pulp & Paper Co.,* 219 App. Div. 120; 246 N. Y. 603; *Loucks* v. *Standard Oil Co.,* 224 N. Y. 199; *Meacham* v. *Jamestown, F. & C. R. R. Co.,* 211 N. Y. 346; *Matter of Berkovitz* v. *Arbib,* 230 N. Y. 261; *Matter of Inter-Ocean Food Products,* 206 App. Div. 426; *Kelvin Engineering Co.* v. *Blanco,* 125 Misc. Rep. 728.)

O'BRIEN, J. The complaint was dismissed on the merits and the judgment has been affirmed.

The following facts are alleged in the complaint and admitted in the reply: In the year 1925, at New York, defendants, who are citizens and residents of this State, contracted in writing for the sale and delivery to plaintiff within the United States of a quantity of zinc concentrates. By a clause in the contract the parties agreed that all differences arising thereunder should be " arbitrated at London pursuant to the Arbitration Law of Great Britain." Differences arose concerning an alleged failure to deliver in accordance with the terms of the contract and plaintiff served notice upon defendants at New York requesting them to concur in the nomination of a certain named individual or of some other resident of London as sole arbitrator. The notice also stated that in the event of defendants' failure to concur in the nomination of an arbitrator, plaintiff would apply to the High Court of Justice of England for such an appointment pursuant to the provisions of the Arbitration Act of 1889 (52 and 53 Vict., ch. 49). On defendants' failure to comply with this notice, plaintiff obtained from the King's Bench Division an order permitting him to issue a form of process which is described in the complaint as an originating

summons.  This process was served upon defendants at New York and it directed them to appear at a certain time and place in London before a master in chambers so that an arbitrator might be appointed.  Defendants again failed to comply and thereupon the master appointed an arbitrator.  He issued a notice which was served upon defendants at New York requiring them to furnish him at a specified time and place in London with all documents relevant to the matters in dispute.  This notice, like the others, was ignored by defendants.  The arbitrator, after causing a peremptory notice to be served upon them, also at New York, proceeded with the arbitration at London and made an award for £46,000 against them.  The complaint alleges that all these proceedings were duly had in accordance with the English Arbitration Act of 1889 and demands judgment for the amount of the award.  Defendants admit their execution of the arbitration clause in the contract but deny that they ever made submission to arbitration and deny also that the proceedings were had in accordance with the English law. They defend this action on the ground that their agreement is contrary to public policy, that the service of the notices and the originating summons is void, that no court of England ever acquired jurisdiction of their persons or property, that the award was obtained without due process of law and that its enforcement would deprive them of property without due process of law.  They argue that the sole question in the case is whether the British court acquired personal jurisdiction in the absence of personal service upon them within British territory.

Settlements of disputes by arbitration are no longer deemed contrary to our public policy.  Indeed, our statute encourages them.  Contracts directed to that end are now declared valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract.  (Arbitration Law; Cons. Laws, ch. 72, § 2; *Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261;

*Matter of Zimmerman* v. *Cohen*, 236 N. Y. 15.) Defendants' agreement without reservation to arbitrate in London according to the English statute necessarily implied a submission to the procedure whereby that law is there enforced. Otherwise the inference must be drawn that they never intended to abide by their pledge. They contracted that the machinery by which their arbitration might proceed would be foreign machinery operating from the foreign court. No other fair conclusion can be drawn from their language. Their contract constitutes something more than a simple executory one subject to breach. Not only under the foreign statute but also under our own arbitration law, it has become irrevocable in the sense that one of the parties without the consent of the other cannot deprive it of its enforcibility. (*Matter of Zimmerman* v. *Cohen, supra.*) In order, therefore, to determine the issue asserted by defendants that jurisdiction never was acquired, the question must be decided whether their agreement to submit to that jurisdiction is contrary to our public policy.

Generally, extraterritorial jurisdiction of alien tribunals, however vigorously asserted, is denied by us. Of its own force, process issued from the court of a foreign state against our citizen and served upon him here is void. Without his consent he cannot be made subject to it, but whenever he agrees to be bound by its service, his conduct presents a problem. Contracts made by mature men who are not wards of the court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought. Few arguments can exist based on reason or justice or common morality which can be invoked for the interference with the compulsory performance of agreements which have been freely made. Courts should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics. Unless individuals run foul of constitutions, statutes, decisions or the rules of public morality, why should they not be

allowed to contract as they please? Our government is not so paternalistic as to prevent them. Unless their stipulations have a tendency to entangle national or state affairs, their contracts in advance to submit to the process of foreign tribunals partake of their strictly private business. Our courts are not interested except to the extent of preserving the right to prevent repudiation. In many instances problems not dissimilar from the one presented by this case have been solved. Vigor has been infused into process otherwise impotent. Consent is the factor which imparts power. Text writers have discussed the subject and have concluded from the authorities that non-resident parties may in advance agree to submit to foreign jurisdiction. (Beale, The Jurisdiction of Courts over Foreigners, 26 Harvard Law Review, 193; Freeman on Judgments [5th ed.], vol. 3, p. 3053; Goodrich Conflict of Law, p. 141; Scott, Fundamentals of Procedure, pp. 39–41.) The last named author, speaking of non-residents, states: "Jurisdiction over the person of the defendant may be acquired by his consent. This consent may be given either before or after action has been brought. Jurisdiction is conferred when the defendant enters a general appearance in an action, that is, an appearance for some purpose other than that of raising the objection of lack of jurisdiction over him. A stipulation waiving service has the same effect. The defendant may, before suit is brought, give a power of attorney to confess judgment or appoint an agent to accept service, or agree that service by any other method shall be sufficient. The defendant in all these cases has submitted to the control of the state and of the court over him." These principles have long been announced by the courts. In *Pennoyer* v. *Neff* (95 U. S. 714, 735) the Supreme Court quoted with approval this language from *Vallee* v. *Dumergue* (4 Exch. 290): "It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound

by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them." In *Grover & Baker Sewing Machine Co.* v. *Radcliffe* (137 U. S. 287, 298) the same court recognized its duty in a proper case to enforce such contracts. There defendant, a citizen of Maryland, before the beginning of any action, had authorized any attorney of any court of record in any State to confess judgment. Judgment by confession was entered against him in Pennsylvania by a prothonotary. The Supreme Court's refusal to sustain that judgment was based upon the fact that it had not been entered in accordance with the contract. Defendant had authorized attorneys, not prothonotaries, to represent him and he was held to have the right to insist upon the letter of the authority conferred by him. It was necessary that he be brought within the jurisdiction of Pennsylvania either by service of process, or by his voluntary appearance, or, as the court significantly added, the fact must appear that " he had in some manner authorized the proceeding." *Wilson* v. *Seligman* (144 U. S. 41, 44) follows the general rule that where a written notice is required it must be served personally upon a defendant within the territorial jurisdiction of the court by whose order or judgment personal liability is to be fixed, " unless he has agreed in advance to accept, or does in fact accept, some other form of service as sufficient." In *Hess* v. *Pawloski* (274 U. S. 352) the Massachusetts statute authorizing the service of process other than personal service within the State upon a non-resident was sustained. The statute required that a copy of the process should be mailed by plaintiff to defendant without the State and that defendant's return receipt should be filed. In commenting upon this decision the Supreme Court in a later case (*Wuchter* v. *Pizzutti*, 276 U. S. 13, 19) emphasized that part of the statute which made necessary the written admission by defendant of the service of process outside the State.

This court in *O'Tier* v. *Sell* (252 N. Y. 400, 404) has accepted that doctrine.

Public policy, therefore, would not forbid defendants to appoint an agent to accept service or to confess judgment in their behalf, nor does it after service forbid them in person to acknowledge receipt of it. If the fact be clear that in advance of any form of litigation or arbitration they actually intended to contract that in the event of such a proceeding they would render themselves subject to foreign process, the same policy ought to prevail. That such was their clear intent has been assumed at Special Term and the Appellate Division and the same conclusion now reached by us is plainly supported by the language of the agreement. We will not entertain the theory that, when they agreed to arbitrate at London according to the English Arbitration Act, they contracted with a reservation to refuse to place themselves on English soil and to resist the English law outside that territory. The complaint, after alleging the essential facts, further avers that all proceedings were duly had in accordance with the Arbitration Act of 1889. Merely as a pleading, it states a good cause of action and at this stage it should not be dismissed. Whether its allegations can be sustained must be determined on the trial of the action. The serious problem is whether the proceedings were in fact conducted according to the English statute as interpreted by the English courts. As so interpreted, was the extraterritorial service regularly effected? What is the practice in the English courts? What construction has been put upon the various rules of procedure? These questions raised by the answer must be decided to some extent as issues of fact, for in the ascertainment of foreign law such issues are involved. (*Croker* v. *Croker*, 252 N. Y. 24.) After evidence of the facts has been produced then it will be timely for the court to determine (*Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127, 138) whether the English Arbitration Act, taken in connection

with the foreign rules of procedure, conforms or conflicts with our public policy.

We do not say that the defendants in subjecting themselves to arbitration in accordance with the British Arbitration Act became bound to submit, not only to the requirements of that act, but to the entire *corpus juris* as developed by the British courts. We do say that there was an implied submission to the terms of the act itself, and to any rules or procedural machinery adopted by competent authority in aid of its provisions. If the arbitration contract had provided that an arbitrator might be named by the London Chamber of Commerce upon notice to the parties, there would be little doubt that notice would be adequate though the defendants were not in Great Britain at the time of its transmission. We cannot say upon this record that any different conclusion ought to follow from notice and nomination at the instance of a judge. The case does not involve the question whether the defendants, staying out of the arbitration, may still challenge in this State the existence of a contract to arbitrate, or the breach of such a contract, unaffected by any adjudication pronounced by the British courts. The case involves no more than this, whether staying out of the arbitration, they are bound by an award, made after due compliance with the requirements of the procedural machinery established by the British statute, unless they are able to show that no contract has been made or broken.

The judgment of the Appellate Division and that of the Special Term should be reversed and defendant's motion for judgment on the pleadings denied, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and HUBBS, JJ., concur.

Judgments reversed, etc.