ABRAHAM L. PARKER, Respondent, v. KRAUSS COMPANY, LTD., Appellant.

Supreme Court, Appellate Term, First Department, December 21, 1935.

*Harry Lyons* [*Harry Lyons* and *Irving J. Seaver* of counsel], for the appellant.

*Benjamin Siegel* [*Benjamin Siegel* and *Edward I. Kaplan* of counsel], for the respondent.

HAMMER, J.   Plaintiff, a resident of New York, is the assignee of two persons, copartners, residents of the State of Pennsylvania but having an office for the transaction of business in the State of New York.   The action is against a Louisiana corporation, which also has an office for the transaction of business in New York. Defendant operates a large department store in a building occupied exclusively by it in New Orleans.   The action is to recover for goods claimed to have been sold and delivered to defendant-appellant by plaintiff-respondent's assignors.   The goods were sold in New York city on written order, copy of which is annexed to the moving affidavit.   The order provided it would be valid only if confirmed by defendant-appellant's New York office, and " is placed and accepted subject to conditions printed on reverse side." The order was confirmed and accepted.   On the reverse side of the order there was printed a clause as follows: " As a part of the consideration of the giving of this order by the purchaser, the seller agrees that no court other than the court of the purchaser's domicile shall have jurisdiction to try any case against the purchaser arising out of this order.   And the seller hereby specifically waives any provision of the law of any state giving said seller the right to sue the said purchaser before the courts of any state other than those of the purchaser's domicile."

No claim is made that the parties did not act voluntarily upon an equal footing in placing and accepting the order or that the order or its conditions were at any time changed, modified or canceled. The summons and complaint were served on defendant-appellant's president while here on its business. The provision is intended to oust the jurisdiction of all State and Federal courts, other than the courts of defendant-appellant's domicile, to try any case arising out of the written order. That no doubt would be a convenience to the defendant. The convenience of a litigant, or witnesses, is a matter of concern to a court on a question of venue, but is not controlling in the matter of jurisdiction.

Any stipulation between contracting parties by which it is attempted to confer exclusive jurisdiction upon a particular court and to oust other courts of jurisdiction provided by law is contrary to public policy. This is the Federal rule. (*Gough* v. *Hamburg Amerikanische Packetfahrt Aktiengesellschaft*, 158 Fed. 174; *Mutual Reserve Fund Life Assn.* v. *Cleveland Woolen Mills*, 82 id. 508.) It is the rule in the State of New York. (*Sudbury* v. *Ambi Verwaltung Kommanditgesselschaft*, 213 App. Div. 98, and cases cited therein; *Sliosberg* v. *New York Life Ins. Co.*, 217 id. 685, opinion by MARTIN, J., now P. J.)

It may be that the rule is traceable to the " jealousy with which, at one time, courts regarded the withdrawal of controversies from their jurisdiction by the agreement of parties." The rule, it would seem, also has basis in the proposition that the jurisdiction of the courts, being established by law, is a matter exclusively within the province of the State, to be increased or diminished either by the people or by the State, through its representatives, solely as a matter of sound public policy. The inviolability of private contracts is always subject to the limitations of the reasonableness and legality of their provisions, which may not in any event contravene public policy.

The statement of the rule and the reason for it, as given by CARDOZO, J., in a concurring opinion in *Meacham* v. *Jamestown, F. & C. R. R. Co.* ([1914] 211 N. Y. 346, 354), apply with equal force and aptness today as when stated. He said: " If jurisdiction is to be ousted by contract, we must submit to the failure of justice that may result from these and like causes. It is true that some judges have expressed the belief that parties ought to be free to contract about such matters as they please. In this state the law has long been settled to the contrary. (*Sanford* v. *Commercial Travelers' Mut. Acc. Assn.*, 86 Hun, 380; 147 N. Y. 326; *Nat. Contracting Co.* v. *Hudson R. W. P. Co.* 192 N. Y. 209. See, also, *Miles* v. *Schmidt*, 168 Mass. 339; *Fisher* v. *Merchants' Ins. Co.*,

95 Me. 486.) The jurisdiction of our courts is established by law, and it is not to be diminished, any more than it is to be increased, by the convention of the parties."

The purported waiver of any provision of the laws of any State giving one of the parties the right to sue before any court other than the courts of defendant-appellant's domicile, which is part of the agreement and in substance seeks to effectuate the same result, is also against public policy and void. Whatever the form, the substance will be considered. That indicates the same illegal object to be accomplished, *i. e.*, the ouster of all courts except those of defendant-appellant's domicile of jurisdiction. The statement of CARDOZO, J., in his concurring opinion in *Meacham* v. *Jamestown, F. & C. R. R. Co.* (*supra*), also has direct application here. He said: " A rule would not long survive if it were subject to be avoided by so facile a device. Such a contract, whatever form it may assume, affects in its operation the remedy alone."

We note the reliance placed by defendant-appellant upon statements of the Court of Appeals in *Berkovitz* v. *Arbib & Houlberg* ([1921] 230 N. Y. 261, at p. 276), and also in *Gilbert* v. *Burnstine* (255 *id.* 348, particularly at p. 354). In the latter case the court says, in part, " Generally, extraterritorial jurisdiction of alien tribunals, however vigorously asserted, is denied by us. Of its own force, process issued from the court of a foreign state against our citizen and served upon him here is void. Without his consent he cannot be made subject to it, but whenever he agrees to be bound by its service, his conduct presents a problem. Contracts made by mature men who are not wards of the court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought. Few arguments can exist based on reason or justice or common morality which can be invoked for the interference with the compulsory performance of agreements which have been freely made. Courts should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics. Unless individuals run foul of constitutions, statutes, decisions, or the rules of public morality, why should they not be allowed to contract as they please? Our government is not so paternalistic as to prevent them. Unless their stipulations have a tendency to entangle national or state affairs, their contracts in advance to submit to the process of foreign tribunals partake of their strictly private business. Our courts are not interested except to the extent of preserving the right to prevent repudiation. In many instances problems not dissimilar from the one presented in this case have been solved. Vigor has been infused into process otherwise impotent. Consent is the factor which imparts power. Text

writers have discussed the subject and have concluded from the authorities that non-resident parties may in advance agree to submit to foreign jurisdiction. (Beale, The Jurisdiction of Courts over Foreigners, 26 Harvard Law Review, 193; Freeman on Judgments [5th ed.], p. 3053; Goodrich Conflict of Law, p. 141; Scott, Fundamentals of Procedure, pp. 39–41.) "

The language is strong and seemingly supports the proposition of a change adopted in our public policy for which appellant contends. That the *Gilbert* v. *Burnstine* case has not changed such public policy seems clear from consideration of a number of very important factors. That opinion was written in support of the court's decision that after the enactment of the Arbitration Law in 1920 (Consol. Laws, chap. 72, § 2) rendering "a provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract * * * valid, enforceable and irrevocable," an agreement by which the parties contract to render themselves subject to foreign process was not contrary to public policy. Referring to an opinion by CARDOZO, J., we find this apt statement in *Berizzi Co.* v. *Krausz* (239 N. Y. 315, at p. '318): " But the only new public policy declared by the present act is the removal of the ban that had been laid by the decisions of the courts upon general and executory agreements for the arbitration of future differences." (See, also, *Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388, 394.) There is no mention in the opinion in *Gilbert* v. *Burnstine* (*supra*) that the previous cases and the rule of public policy enunciated was being modified otherwise than in arbitration as validated by the statute. On the contrary, the court premises its opinion on the following basic statement: " Settlements of disputes by arbitration are no longer deemed contrary to our public policy. Indeed, our statute encourages them. Contracts directed to that end are now declared valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract (Arbitration Law; Cons. Laws, ch. 72, § 2; *Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261; *Matter of Zimmerman* v. *Cohen*, 236 N. Y. 15.) "

The distinction and at the same time the similarity between *Gilbert* v. *Burnstine* and the case under consideration arises, we think, from the regard our courts have for the rules of inviolability of private contracts, of comity and also of public policy. When one of the parties seeks to evade the jurisdiction of a foreign court, or tribunal of arbitration duly invoked by the other party under a contract between them, our courts are reluctant to hold the agreement invalid, the foreign jurisdiction illegally invoked, or to withhold the enforcement in our courts and jurisdiction of a judg-

ment previously obtained in the foreign jurisdiction. Unless the foreign rules of procedure are repugnant to our own public policy, our courts seek to support the foreign jurisdiction and its judgments. This was done in *Gilbert* v. *Burnstine,* although the decision involved the sufficiency of the complaint and conformity of the foreign rules to ours was left an issue for the trial. On the other hand, when the jurisdiction of our courts is otherwise duly invoked by a party plaintiff and the defendant seeks to evade such jurisdiction as ousted by an agreement between the parties litigant, which attempts to confine the jurisdiction of any litigation upon the contract exclusively to the courts or tribunals of a foreign jurisdiction, our courts have invariably held such attempted ouster void as against public policy. The basic idea behind this attitude seems to be that the parties may contract as to the acquisition and continuance of a legal right and even that a certain forum may have jurisdiction of litigation but unless otherwise authorized by law they may not contract away remedies provided by our law, oust our courts of jurisdiction established by law, or confer jurisdiction not so established. It has been held repeatedly by our courts that remedies can only be created by law, and the tribunal before which a remedy is sought, as well as the means and processes of enforcement, affect or are part of the remedy which likewise can only be created, authorized and regulated by law. A party may of course submit himself to the jurisdiction of the court, which otherwise might not obtain jurisdiction, either by personal appearance, stipulation, agreement or authorization to another. In *Gilbert* v. *Burnstine* the agreement to arbitrate was valid because authorized by our Arbitration Law, and the defendant agreed to submit to the jurisdiction of the English tribunal.

In that case the plaintiff had invoked the jurisdiction of England under the agreement wherein the defendant had agreed without reservation to submit to arbitration in London according to the English statute. Then, to defeat the English judgment entered on default after service here of notice of the proceedings, the defendant sought to defeat an action here to enforce such judgment on the pretext that not only was the agreement contrary to public policy in that it attempted to exclude our courts, but the service of notice here also was illegal and void under our law and public policy. Holding that by the contract to arbitrate the defendant agreed to submit to the foreign jurisdiction, and under the modification of our public policy such agreement was valid, the court also held that by the agreement the parties intended to render themselves subject to foreign process. The opinion (at p. 357) states: " Public policy, therefore, would not forbid defendants to appoint an agent

to accept service or confess judgment in their behalf, nor does it after service forbid them in person to acknowledge receipt of it. * * * We will not entertain the theory that, when they agreed to arbitrate at London according to the English Arbitration Act, they contracted with a reservation to refuse to place themselves on English soil and to resist the English law outside that territory.'' The court held that the complaint stated a good cause of action and left to the trial the question of proof of its allegations and decision whether the English Arbitration Act, taken in connection with the foreign rules of procedure, conformed or was in conflict with our public policy. The opinion ended by stating that the case involved no more than whether staying out of the arbitration defendants were bound by an award made after compliance with British procedure unless they were able to show no contract made or broken. We are of the opinion that the complaint here states a cause of action, which under our laws generally and under section 225 of the General Corporation Law in particular is within the jurisdiction of our courts, the doors of which should not be shut to the parties litigant. The motion for dismissal was based solely upon the ground of lack of jurisdiction by reason of the clause attempting to confer exclusive jurisdiction on the courts of Louisiana. No facts are shown which appeal to the conscience of the court as reason why such jurisdiction should not be assumed. The order should be affirmed, with ten dollars costs and disbursements.

SHIENTAG, J., concurs; LYDON, J., dissents, with opinion.

LYDON, J. (dissenting). I dissent.

I think that a contract such as is now before us is no longer to be regarded as against the public policy of the State even though the objecting party to the contract be a resident of the State. I think we have adopted the more liberal and, it seems to me, the more sensible rule that parties are free to consult their own interests and convenience in respect to the forum in which enforcement of the contract is to be sought as well as in respect to most other matters. It seems to me anomalous in the extreme to hold that while an agreement to submit a possible controversy to the determination of a foreign arbitral tribunal is valid (*Gilbert* v. *Burnstine*, 255 N. Y. 348), an agreement to submit the same controversy to the adjudication of the courts of another State of the Union is invalid.

But it is unnecessary to go so far as I have suggested in order to decide the case before us. The plaintiff's assignors were non-residents of the State. As non-residents they would have had **no**

right to complain that any public policy of this State was being violated if our courts refused to hear their case when they had agreed that it should be tried elsewhere. (See authorities cited in *Gilbert* v. *Burnstine*, 255 N. Y. 348, 355.) Indeed their right to be heard here at all was a privilege conferred by our statute (General Corporation Law, § 225). That privilege they "specifically waived" in the contract before us. And it seems to me that public policy would be very decidedly violated if we were to hold that plaintiffs, as assignees of the contract, with full notice of the waiver of their assignors, could nevertheless insist on suing here despite the protest of the other party to the contract.

The order should be reversed and the motion granted.

Order affirmed, with ten dollars costs and disbursements.