AMERICAN EUTECTIC WELDING ALLOYS
SALES CO., INC., *v.* GRIER.

SAME *v.* TRECOT.

1. APPEAL AND ERROR—DENIAL OF MOTION FOR SUMMARY JUDGMENT.
An order denying a motion for summary judgment is not final, hence, leave to appeal therefrom must be granted in order to review it prior to entry of final judgment (CLS 1956, § 650.1).

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur, Appeal and Error § 78 (Supp).
Right to appellate review of decision refusing motion for summary judgment.   103 ALR 1104.
[2, 3] 3 Am Jur, Appeal and Error § 440.
[4] 14 Am Jur, Costs § 96.

2. Same—Leave to Appeal—Interlocutory Order.

> The denial of leave to appeal from an interlocutory order does not foreclose the litigants from ultimate review of the interlocutory order on appeal in the principal case (CLS 1956, § 650.1).

3. Same—Denial of Summary Judgment—Interlocutory Order—Leave to Appeal.

> Appeal from order denying motion for summary judgment by circuit court, based on judgments of New York courts confirming awards of arbitrators, and taken as a matter of right, is dismissed for want of application and grant of leave to appeal from such interlocutory order (CLS 1956, § 650.1; Court Rule No 60 [1945]).

4. Costs—Brief.

> No costs are allowed appellees notwithstanding dismissal of appeal, where they filed no brief.

> Smith, Edwards, and Souris, JJ., dissenting.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 3, 1961. (Docket Nos. 16, 17, Calendar Nos. 48,684, 48,685.) Decided April 26, 1961. Rehearing denied June 28, 1961.

Two actions by American Eutectic Welding Alloys Sales Co., Inc., a foreign corporation, against Hilton M. Grier, Jr., and Frank P. Trecot, respectively, on foreign judgments entered on awards of arbitrator. Motions for summary judgments denied in Detroit common pleas court and in circuit court. Plaintiff appeals upon claim of right without application for leave. Cases consolidated. Appeals dismissed.

*Butzel, Levin, Winston & Quint,* for plaintiff.

Black, J. Mr. Justice Smith writes:

"Under the view we have taken of the case it is pointless to discuss the difference, if any there be in reality, at this stage in the judicial process, between (1) an appeal as of right, and (2) an application for leave to appeal involving 'a construction of the Constitution or of any statute of this State, or any matters of great public importance   *   *   *,'

*which application we are required to grant."* (The emphasis is that of the present writer.)

My learned Brother leans directly on an old statute, the most recent amendment of which was forced by the declaration of separational independence found in *People* v. *Stanley,* 344 Mich 530. The amendment reads (CLS 1956, § 650.1 [Stat Ann 1959 Cum Supp § 27.2591]):

"Sec. 1. Writs of error upon any final judgment or determination, where the judgment exceeds in amount $500.00, or where judgment has been rendered upon a directed verdict for defendant in cases involving a claim of more than $500.00, may issue, of course, out of the Supreme Court, in vacation as well as in term, and shall be returnable to the same Court; and in all other cases such writ may issue in the discretion of the Supreme Court or any justice thereof upon proper application: Provided, however, That if said case involves a construction of the Constitution or of any statute of this State, or any matters of great public importance or involves the contest of a will, such application need only show such fact and, when filed, the writ of error shall issue of course."

So we are "required" to grant all applications— whatever their conclusionary form or want of judicial verification[1]—counsel may choose to make under this statute. Who "requires" such processual obedience by this Court? Lo, it is the legislative branch. I disagree.

This is the tale of 2 reviews of twice-unsuccessful motions for summary judgment in each of the captioned cases. It would end, if my Brother's opinion prevails, with the floodgates opened wide for appeals of right in law cases and an abject surrender of judicial power to the legislature. With the legisla-

---

[1] See the presently quoted form of application we are "required" to grant.

ture thus dictating the course and extent of appellate judicial process, it would not be difficult to foretell continued gleeful death in the legislature of any measure designed to provide overdue intermediate assistance for this highest Court of a State. Our only available means of relief, from today's and tomorrow's overload (that of requiring application and grant of leave to review *all* matters we may lawfully review), would be lost this day if our majority should decide to haul down the constitutional flag article 7[2] has entrusted to our membership.

It is hardly necessary to add that a continuously overloaded appellate court does not do as good precedential work as otherwise it might do. "The whole swarm of rulings" predicted by Mr. Justice GRAVES (see full quotation, *infra*[3]) would be brought here for review, once the word is professionally passed that appeal by statutorily "required" writ of error is available generally to all who are willing to write, into a "claim" of appeal, that a question of constitutional or statutory construction, or "of great public importance," is involved. This surely would mean open advent of the cussed and discussed "one-man opinion."[4]

---

[2] Const 1908.—REPORTER.

[3] *Polhemus* v. *Ann Arbor Savings Bank,* 27 Mich 44, 51.—REPORTER.

[4] "The greatest bane of appellate courts today, in my judgment, is the so-called 'one-man' opinion. I am referring to the situation where an opinion purports to be the decision and reflect the thinking of all of the judges on the appellate court but which in fact represents the view and work essentially of just one of the judges. Of all the defects in our appellate practice it is the most insidious for the simple reason that few lawyers or judges and virtually no laymen are even aware that it exists." Chief Justice Vanderbilt, writing in 26 Cincinnati L Rev, Improving the Administration of Justice, p 257.

"Criticisms of appellate court decisions sometimes are that they rest on one-man opinions. If the judges are too busy, they may be driven to concentrating on the cases assigned to them for opinion writing, accepting, more or less as of course and without the necessary study and scrutiny, the decisions and opinions of their brothers in the other cases. This makes for one-man decisions, one-man opinions. There is no object in swapping what may be the erroneous decision of

These suits originated in Detroit common pleas. They are based on awards made by a New York arbitrator, allegedly on authority of separate and like contracts made in New York by and between the plaintiff and each defendant. Each award was confirmed by judgment of a New York trial court. The confirmed award to plaintiff against defendant Grier amounted to $749.60. The confirmed award to plaintiff against defendant Trecot was in the sum of $908.20. No process was served on the defendants in or from New York State save only as contentiously indicated in the respective opinions of Judge Neuenfelt in circuit and Justice SMITH here.

The cases having come to issue in common pleas, plaintiff filed motions for summary judgment against each defendant. Judge Vokes of common pleas denied both motions. Plaintiff duly applied to the circuit court for leave to appeal from the orders of denial.[5] The circuit court granted leave in each instance. In circuit plaintiff moved again for summary judgment against each defendant. That court denied both motions and ordered remand for further proceedings under section 21 of Court Rule No 77 (1945). Plaintiff, deigning no application for leave this time, arrives upon claim of right by a captioned "claim of appeal" reading (in each case) as follows:

"American Eutectic Welding Alloys Sales Co., Inc., a foreign corporation, plaintiff, claims an appeal

a trial judge for what may well be the equally erroneous decision of one appellate judge. What the parties and public want and are entitled to have, on appeal, is the composite judgment of the entire group of wise, skilled, and trained men, possessed of judicial temperament, who have been selected to sit on the court of last resort. In turn, the latter must not be placed on a beltline production basis." Chief Justice DETHMERS, writing in The Annals of American Academy of Political and Social Science, March issue, 1960, p 162.

[5] The reader will note the completely duplicatory requirements of Court Rules Nos 60 and 77. It is passing strange that this plaintiff applied in circuit for leave to review denial of these motions and yet has seen fit to omit application here for leave to review circuit court denial thereof. [For Court Rule No 77, see 326 Mich lvi.—REPORTER.]

from the order entered March 4, 1960, by the Honorable Lila M. Neuenfelt, judge of the circuit court for the county of Wayne, denying summary judgment. Appellant takes general appeal pursuant to PA 1953, No 4, as amended, and other applicable laws and statutes of the State of Michigan in such cases made and provided. Appellant shows that the effect of the order appealed from is to deny full faith and credit to a judgment of the supreme court of the State of New York upon which plaintiff's cause of action is based."

We cannot evade this challenge of the judicial power. Either we have authority—and duty—to insist on due compliance by *all* appellants with the applicable procedures of 31-year-old Court Rule No 60 (1945), or the legislature has power to suspend those procedures when that body chooses so by a measure "requiring" grant of an "application" for leave to appeal or constitutional writ. Such is the real issue before us, neglect of which is surely due to seat the legislature firmly on the judicial steed. Until now, we have not been unhorsed. "Spurs can only be applied by a rider and the legislature does not occupy the judicial saddle." (WIEST, J., concurring in *Stepanian* v. *Moskovitz*, 232 Mich 630, 639.)

I stress *in limine* this stark fact: *No judgment for or against the plaintiff in either of the 2 cases has as yet been entered in either of the 2 courts below.* Thus, under the old practice as well as the new, denial prior to trial of an interlocutory motion has never been reviewable by issuance and return of a writ of error.

In *Hermesmeyer* v. *Northwestern Investment Co.*, 254 Mich 384, the defendant filed motion for summary judgment. The motion was denied, and defendant claimed appeal of right. The Court said:

"No application for leave to appeal was made to this Court, and no such leave has been granted. The

appeal must therefore be dismissed. As this question is not raised by counsel for appellees, no costs will be allowed."

In *Quail* v. *Cole,* 260 Mich 642, the appellant claimed appeal of right from another nonfinal order (setting aside default and judgment) in a law case. Relying on this same statute (cited then as CL 1929, § 15491) to avoid the tedium and risk occasioned by an application for leave to appeal, the appellant was met bluntly this way:

"The statute relates to final judgments, and plaintiff has no judgment, but seeks direction, by this Court, to have his judgment reinstated. The mentioned rules, while requiring mandamus to be termed an appeal, do not change the law that it is an original writ, and that it does not issue without application and allowance.

"Leave to prosecute an appeal in the nature of mandamus was necessary and was not obtained. We, therefore, *sua sponte,* dismiss the appeal."

That is what we should do here, *sua sponte,* if for no other reason than that of fairness to the hundreds of counsel who do comply with Court Rule No 60 (1945) when review of before-trial orders in law cases is sought.

Even if the Constitution—not some statute—"required" that we grant applications for writs of error, it seems to me that we should insist that the appeal-bent party submit an application under Court Rule No 60, just for the *pro forma* appearance of things in the records of a visibly bemused high court. When the language in question first appeared in said section 1 (by the act of 1917[6]), implemental Court Rule No 59 was at once adopted. Until superseded in 1931 by like requirement of Court Rule No 60, said Rule No 59 made clear the position of this Court that the

---

[6] PA 1917, No 172, quoted with other amendments of said section 1 in *In re Fitch Drain No. 129,* 346 Mich 81, 85, 86, 87.

statute required an "application" as a condition of its invocation.

"Rule 59. Any one desiring to secure a writ of error under the provisions of Act No 172 of the Public Acts of 1917, shall, within 30 days from the entry of judgment, prepare a concise statement of what is involved in the case and the points relied upon and notice the same on the opposite party for settlement before the circuit judge. The statement when so settled shall be the basis of the application to this Court.

"To take immediate effect.

"Adopted September 28, 1917."    (199 Mich xxx.)

Now let us assume that this plaintiff has filed formal and Rule No 60-compliant applications for writs of error to review Judge Neuenfelt's orders. Such applications would be quite out of order because the constitutional writ of error is not and never was employable to review denial of interlocutory motions.

"The plaintiff's attorney raises the point that the case is not one which can be reviewed upon writ of error, and in this view we agree. The proceedings were interlocutory, and not final, and resulted in no final judgment against defendant. The province of a writ of error is to bring up for review final judgments or determinations, and it is not employed to bring up interlocutory decisions or discretionary orders made pending litigation. This has been declared in numerous decisions of this Court, some of which are the following: *Holbrook* v. *Cook,* 5 Mich 225; *Chaffee* v. *Soldan,* 5 Mich 242; *Conrad* v. *Freeland,* 18 Mich 255; *Adams* v. *Church,* 22 Mich 79; *Polhemus* v. *Ann Arbor Savings Bank,* 27 Mich 44; *Comstock* v. *Wayne Circuit Judge,* 30 Mich 98; *Miller* v. *Rosier,* 31 Mich 475." *Brady* v. *Toledo, A. A. & N. R. Co.,* 73 Mich 457.

"If the granting or refusing of an interlocutory motion can be so worked into the record as to au-

thorize error to be assigned on it, by a mere state-
ment in the decision like that made by the court be-
low in this instance, then the common-law compo-
sition of the record and the generally admitted scope
of a writ of error can be entirely changed by what
in time will become a mere form, and the whole
swarm of rulings upon pure practice questions and
on points rightly and strictly depending on mere
judicial discretion will be brought here for review.
But we are satisfied that no such jurisdiction is con-
ferred or ought to be." *Polhemus* v. *Ann Arbor Sav-
ings Bank,* 27 Mich 44, 51.

The real trouble with meritorious review of these
denied motions is that we are left with a complete
want of adversary or independent submission of a
grave and epochal question of responsiveness of a
defendant to process allegedly served in Michigan
by mail from another State; a question Justice
SMITH himself characterizes as "one of first im-
pression in this jurisdiction." We have no brief
from these manifestly disinterested appellees and no
brief from counsel *amicus.* Better, I suggest, that
these cases be permitted their regular course in De-
troit common pleas in order that an adequate record
of fact and due trial come here for proper deter-
mination of the ever-present first question in ap-
pealed cases; whether the testimonially assembled
facts do or do not present the questions of law the
appellant would have us decide. Such is the only
safe course for a State high court of last resort.
What we write now without due care and thorough
briefing may errantly decide hundreds and hundreds
of cases in law office and lower court before the same
question comes here again on sufficient presentation.

*To summarize:* An order denying motion for sum-
mary judgment is not final, either in circuit or com-
mon pleas. When, in such instance of denial, a
trial of presented issues ensues and judgment is en-

tered against the unsuccessful movant, he may review of right the final judgment and, by that means, test the order of denial. If he desires an earlier test, he must apply for leave under the rule.

Suppose this plaintiff, following entry of these orders in circuit, had unsuccessfully sought leave to appeal therefrom. Would our orders denying leave foreclose ultimate review of that which we at the time determined not to review? The answer is found in *Malooly* v. *York Heating & Ventilating Corp.*, 270 Mich 240; *Great Lakes Realty Corp.* v. *Peters,* 336 Mich 325, and the opinion signed by Justices SMITH, EDWARDS, VOELKER, and BLACK, in *Hack* v. *Concrete Wall Co.,* 350 Mich 118, 129, 130.

I would dismiss plaintiff's appeals for want of application and grant of leave. Defendants, having filed no brief, should not be allowed costs.

DETHMERS, C. J., and CARR, KELLY, and KAVANAGH, JJ., concurred with BLACK, J.

SMITH, J. (*dissenting*). The issue before us involves the full faith and credit clause of the United States Constitution. Appellant had judgment, confirming an arbitrator's award, in the supreme court of the State of New York. Coming to Michigan to enforce his New York judgment the plaintiff filed an exemplified copy of the records and files of the New York court,[1] and, after issue joined, moved for sum-

---

[1] "There has been filed herein an exemplified copy of the records and files of the supreme court for the State of New York, county of New York, showing that said court duly confirmed the American Arbitration Association arbitrator's award upon proper notice and according to the laws of the State of New York. Said exemplified copy includes notice of motion to confirm the award, affidavit in support thereof, a copy of the contract upon which the award was based, the award, affidavit of service of said documents, order confirming award and for judgment, notice of settlement thereof and proof of service thereof."

Affidavit in support of motion for summary judgment.

mary judgment. In reply defendant[2] submitted an affidavit of merits stating merely that he had a meritorious defense to the action and that he "was never served with any legal notice of any suit pending in the supreme court of the State of New York, nor was he within the jurisdiction of the State of New York." In common pleas court (where the action was commenced) the motion for summary judgment was denied and, upon appeal taken, such denial was confirmed, the opinion filed in the circuit stating these grounds for so ruling:

"The court has checked all the cases which counsel has given the court. The files definitely show that all of the letters which were sent certified mail to these 2 defendants in Detroit, were returned to the sender, the plaintiff in these cases, marked 'Return to Writer —Unclaimed'.

"Obviously, these defendants had no notice whatsoever of any action pending in the court in New York.

"The court might go along with the law as presented by plaintiff in the fact that it might obtain a judgment on a consent contract such as was entered into in this case. However, the court definitely believes that the defendants must have some knowledge of any lawsuit which is pending. If plaintiff did not have the correct addresses of defendants it should have ascertained them. From the files, apparently the defendants never had any personal knowledge of any action pending in New York and to sue on a judgment here which would be binding is not giving the defendants a fair hearing."

A general appeal to this court was taken, "pursuant to PA 1953, No 4, as amended (CLS 1956, § 650.1 [Stat Ann 1959 Cum Supp § 27.2591]), and other applicable laws and statutes of the State of Michi-

---

[2] There are actually 2 cases and 2 defendants on appeal here, but the cases are essentially similar and, to simplify matters, we shall speak of Hilton M. Grier, Jr., as the defendant, save where variances are to be observed.

gan in such cases made and provided." The claim of appeal continues "that the effect of the order appealed from is to deny full faith and credit to a judgment of the supreme court of the State of New York upon which plaintiff's cause of action is based."

The question presented is one of first impression in this jurisdiction. We need not, at this stage in the development of the arbitration process, elaborate upon its importance, or upon its beneficial aspects. There is no doubt that the early arbitration cases were heard by the courts in an alien and hostile atmosphere. Much of the criticism was grounded upon the feeling that arbitration was an attempt to "oust" the courts of their jurisdiction,[3] although less worthy motives have been both ascribed and denied.[4] The early attitude, however, has been altered. The courts less commonly face, nowadays, a policy argument against arbitration or its enforcement. Moreover, the cases are now heard in a more benign atmosphere, reflected in the rulings of the court. As phrased by Mr. Justice Cardozo with his usual felicity, "One who has become a party to a contract for the arbitration of future differences must live up to his engagement according to its spirit. He will not be permitted to wrest it from its purpose and turn it into a shallow form by taking refuge in a disingenuous silence or in subtle and adroit evasions."[5] Partly accountable for such change of attitude is the pressure of the modern docket. Legislation, also, has had its influence,[6] particularly that of the State

---

[3] The origin of the expression seems to have been *Kill* v. *Hollister* (1746), 1 Wils KB 129 (95 Eng Rep 532).

[4] See Sayre, Development of Commercial Arbitration Law, 37 Yale LJ 595.

[5] *Newburger* v. *Lubell*, 257 NY 383, 387 (178 NE 669).

[6] House of Representatives Report No 96, 68th Congress, 1st Sess, upon the United States arbitration act of 1925 (9 USC [1958 ed], § 1 *et seq.*), states in part as follows:

"The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements

of New York, with which we are here concerned. Its
statute, enacted in 1920, was the first of the American
statutes[7] seeking to make arbitration really effec-
tive. With only a portion of its liberalizing aspects
are we here concerned. It is provided by New York
law (by which the parties agreed to be governed)
that the making of a contract "providing for arbitra-
tion in this State, shall be deemed a consent of the
parties thereto to the jurisdiction of the supreme
court of this State to enforce such contract or sub-
mission and to enter judgment on an award there-
on."[8] Also, it is provided that service "shall be made
in the manner specified in the contract,"[9] which, in
this case, is, among other ways, "by mail addressed to
such party * * * at his last known address."
Finally, it is provided that judgment entered upon an
award shall have the same force and effect as any
other judgment rendered in the supreme court of the
State of New York.[10]

We have set all of this forth in some detail because
the objection of the defendant to jurisdiction goes to

---

to arbitrate upon the ground that the courts were thereby ousted from
their jurisdiction. This jealousy survived for so long a period that
the principle became firmly embedded in the English common law
and was adopted with it by the American courts. The courts have
felt that the precedent was too strongly fixed to be overturned without
legislative enactment, although they have frequently criticized the
rule and recognized its illogical nature and the injustice which results
from it. The bill declares simply that such agreements for arbitra-
tion shall be enforced, and provides a procedure in the Federal courts
for their enforcement. * * * It is particularly appropriate that
the action should be taken at this time when there is so much agitation
against the costliness and delays of litigation. These matters can be
largely eliminated by agreements for arbitration, if arbitration agree-
ments are made valid and enforceable." See *Kulukundis Shipping Co.
v.Amtorg Trading Corp.* (CCA 2), 126 F2d 978.

[7] The earlier statutory development in England is discussed in
Sayre, Development of Commercial Arbitration Law, 37 Yale LJ 595,
605–608.

[8] New York civil practice act (Clevenger's Practice Manual, 1960),
§ 1450.

[9] *Ibid.*

[10] New York civil practice act (Clevenger's Practice Manual, 1960),
§ 1466.

jurisdiction over the person. The complaint made is not that defendant got no notice of what was going on, but that he got no "legal" notice.

Upon the matter of notice the record discloses as follows: First, as to defendant Trecot, New York counsel mailed notices (demands for arbitration) to Frank P. Trecot at his last known address, 1453 Iroquois avenue, Detroit 14, Michigan, on October 14, 1958, and November 6, 1958. Such envelopes are on exhibit before us. They were sent by certified mail, return receipt requested, but were returned to the sender marked "unclaimed." A similar demand was sent to this defendant in care of the Weldwire Company at 3341 Puritan, Detroit, Michigan, also returned to the sender "unclaimed." However, a notice sent to this same defendant by ordinary first class mail, the envelope containing counsel's return address, was never returned to the sender.

As to defendant Hilton M. Grier, Jr., a demand for arbitration was sent by certified mail, return receipt requested, to his last known address at 15094 Piedmont, Detroit 23, Michigan. The return receipt in this case was signed by Norma L. Grier, indicating that she received the letter on October 16, 1958.

After the arbitration hearing the defendants were notified by the American Arbitration Association of their opportunity to submit additional evidence to the arbitrator, following which Mr. Grier did request that another hearing be scheduled. This, however, he did not attend. Defendant Trecot neither requested another hearing nor did he submit written evidence, but the letter addressed to him and sent by regular mail, was not returned to the sender.

Following the taking of testimony and arguments the arbitrator granted plaintiff an award against Trecot in the amount of $908.20 and against Grier in the amount of $749.60. Following the receipt of these awards plaintiff moved to confirm in each case

and notified the defendants by mail, which mail was not returned, nor was the notice of settlement of the supreme court of New York, which was filed in each case and was similarly served by mail.

It is upon these facts that the defendants assert that they were "never served with any legal notice of any suit pending in the supreme court of the State of New York." And it is upon these facts that the circuit court found that "these defendants had no notice whatsoever of any action pending in the court in New York." The court continues, "the court definitely believes that the defendants must have some knowledge of any lawsuit which is pending. If plaintiff did not have the correct addresses of defendants it should have ascertained them. From the files, apparently the defendants never had any personal knowledge of any action pending in New York and to sue on a judgment here which would be binding is not giving the defendants a fair hearing."

There is no doubt that it is within the competence of business men to contract as they may see fit respecting the service of notices upon them. The matter was well put in a leading New York case involving consent to personal jurisdiction in arbitration proceedings:[11]

"Contracts made by mature men who are not wards of the court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought. Few arguments can exist based on reason or justice or common morality which can be invoked for the interference with the compulsory performance of agreements which have been freely made. Courts should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics. Unless individuals run foul of constitutions, statutes, decisions, or the rules of public morality, why should

---

[11] *Gilbert* v. *Burnstine*, 255 NY 348, 354, 355 (174 NE 706, 73 ALR 1453).

they not be allowed to contract as they please? Our government is not so paternalistic as to prevent them."

The case, then, comes to this: The parties before us agreed, under statutory sanction, that notices might be served upon them in the same manner as most people employ in conducting their daily affairs, namely, by regular mail. In so doing the parties took upon themselves, as they were free to do, the remote chance of a letter's misdelivery and nonreturn, the threat of which might, of course, be lessened by their own care in maintaining a reasonably close liaison with their correspondents and with the postal authorities. No reason suggests itself why, in the words of the New York court of appeals, *supra*, mature men who are not wards of the court should not be allowed to contract in these particulars as they please.

The same observations apply to consent to personal jurisdiction. It is, of course, axiomatic that without jurisdiction over the person a judgment against him is void. However, one of the well-recognized methods of conferring jurisdiction over the person is by consent, which may be given prior to the arising of any cause of action as well as later.[12]

Here the parties agreed to be governed by the laws of New York and consented to the arbitration of controversies in New York according to the rules of the American Arbitration Association. It follows that they are bound by the Association's rules of procedure, one of which provides for service by the mailing of notice to the defendant's last-known address, a procedure which this record does not substantially controvert. The circuit judge apparently felt that the form of notification consented to by the parties did not result in actual notice to them nor did it have

---

[12] Restatement, Conflict of Laws, § 77(1) (d).

the character of "legal" notice, which ordinarily means personal service, and thus that the judgment was not entitled to full faith and credit. The issue was misconceived. The parties bargained for a certain type of notice and this they got. The issue is one of law only, as to which the positions of the parties, as well as the law with respect thereto, are clear. There was an abuse of discretion in denying the motion for summary judgment, and, under these circumstances, the order denying full faith and credit was final.

Under the view we have taken of the case it is pointless to discuss the difference, if any there be in reality, at this stage in the judicial process, between (1) an appeal as of right, and (2) an application for leave to appeal involving "a construction of the Constitution or of any statute of this State, or any matters of great public importance,"[13] which application we are required to grant.

The judgment should be reversed and the cause remanded to the circuit court for proceedings not inconsistent herewith. Costs to appellant.

EDWARDS and SOURIS, JJ., concurred with SMITH, J.

---

[13] CLS 1956, § 650.1 (Stat Ann 1959 Cum Supp § 27.2591).