In the Matter of the Arbitration between LIBERTY COUNTRY WEAR, INC., Petitioner, and RIORDAN FABRICS CO., INC., Respondent.

Supreme Court, Special Term, New York County, March 29, 1950.

*Wilfred Feinberg* for petitioner appearing specially.

*Benjamin S. Kalnick* and *I. Howard Kay* for respondent.

HOFSTADTER, J. The petitioner, a Massachusetts corporation, which has its principal place of business in Cambridge, Massachusetts, and is not doing business in this State, appearing specially, moves to vacate the service upon it by registered mail at its home office of a notice of arbitration. The notice of arbitration was given by the National Federation of Textiles, Inc. pursuant to an agreement between the petitioner and the respondent. The petitioner asserts that the arbitration clause, printed on the reverse side of the agreement, does not bind it and that in any case it has not consented to the jurisdiction of the New York courts over it.

Before proceeding to the merits, brief comment on a preliminary contention of the respondent is in order. The respondent argues that since the petitioner appears specially to contest jurisdiction, it is confined to the issue of jurisdiction and that its prayer for other relief must be ignored. Since the petitioner has not in its papers specified relief other than the setting aside of the service of the notice and the staying of arbitration under it, the respondent's contention seems without point. If, however, the respondent implies that the petitioner is foreclosed from disclaiming an obligation under the arbitration clause, this implication must be rejected. The only basis of jurisdiction over the petitioner is the arbitration clause; obviously, if, for any reason, this clause cannot be given effect, jurisdiction fails. It follows, as a matter of course, that the petitioner is entitled on this application to challenge the efficacy of the arbitration clause.

On July 14, 1949, the petitioner signed an order on the respondent's printed form for the purchase from the respondent of a quantity of gabardine. On the face of the order form, immediately above the petitioner's signature, the following is

printed: "This order is given subject to the terms herein stated and those on the reverse side hereof which are hereby accepted by the buyer * * *." On the reverse side various clauses are printed under the heading in bold faced type: " PROVISIONS OF CONTRACT COVERING PURCHASE AND SALE OF FINISHED GOODS." Part of the first of these clauses, dealing with terms, has been crossed out and at its end there appears typewritten " net 60 days."

The arbitration clause, the last of the printed clauses, is as follows: "11. All controversies arising out of or relating to the contract, or any modification thereof, shall be settled by arbitration in New York in accordance with the Arbitration Rules of the National Federation of Textiles, Inc."

The petitioner says that when it signed the order it was unaware of this clause on the reverse side in " small print " and that its attention was not called to the clause either in its previous dealings with the respondent or in the course of placing this order. Parenthetically it may be noted that the respondent states that this was the twentieth contract between the parties on the same printed form. Relying on cases such as *Matter of Albrecht Chemical Co. (Anderson Trading Corp.)* (298 N. Y. 437), *Matter of Arthur Philip Export Corp. (Leathertone, Inc.)* (275 App. Div. 102), and *Matter of Tanenbaum Textile Co.* v. *Schlanger* (287 N. Y. 400), the petitioner argues that it is not bound by the arbitration clause. The petitioner's position is, in my opinion, not well taken. The cases cited are distinguishable. It did not appear in them, as it does here, that the reference to the clauses on the reverse side is in the body of the paper and precedes the signatures, thus clearly making it part of the agreement. The reference is in clear type and in plain and direct language incorporates the clauses on the reverse side in the order and commits the buyer to their acceptance. The arbitration clause is, therefore, an integral part of the agreement and binds the petitioner, whether the petitioner knew of its presence or not. The contract here is substantially identical with that held to conclude the parties in *Matter of Richardson (Southeastern Cottons, Inc.)* (N. Y. L. J., Aug. 11, 1949, p. 243, col. 4, affd. 275 App. Div. 1033). (See, also, *Matter of Huxley [Reiss & Bernhard, Inc.]*, 294 N. Y. 146, and *Matter of Catz Amer. Sales Corp. [Holleb & Co.]*, 272 App. Div. 689, affd. 298 N. Y. 504.)

There remains for consideration the question whether the petitioner by its acceptance of the arbitration clause consented

to the service of the notice by registered mail. The clause, it will be recalled, provided for arbitration in New York " in accordance with the Arbitration Rules of the National Federation of Textiles, Inc." Thereby the petitioner consented to the procedure prescribed by the Federation's rules. The following are the applicable rules:

" 3. *Notice to Parties.* The Bureau shall promptly notify each of the parties of the request for arbitration and shall call for the selection of arbitrators as provided in these Rules. Such notice shall be sent by mail addressed to each party at the address shown on the agreement providing for arbitration or to such other address as may be on file with the Bureau.

" 25. *Service of Papers.* Any party to an agreement for arbitration pursuant to these Rules consents that any papers, notices or process necessary or proper for the enforcement of the arbitration agreement and proceedings and for entry of judgment on any award, including appeals in connection therewith, may be served upon such party by registered mail or by personal service within or without the State of New York or the United States of America, providing a reasonable time is allowed such party thereby to appear and defend."

Since service by registered mail without the State was thus expressly authorized the service made on the petitioner complied with the rules. Section 1450 of the Civil Practice Act, so far as here material, declares: " § 1450. *Remedy in case of default.* The making of a contract or submission for arbitration described in section fourteen hundred forty-eight hereof, providing for arbitration in this state, shall be deemed a consent of the parties thereto to the jurisdiction of the supreme court of this state to enforce such contract or submission. A party aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration, described in such section may petition the supreme court, or a judge thereof, for an order directing that such arbitration proceed in the manner provided for in such contract or submission. Eight days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner specified in the contract or submission, and if no manner be specified therein, then in the manner provided by law for personal service of a summons, within or without the state, or substituted service of a summons, or upon satisfactory proof that the party aggrieved has been or will be unable with due diligence to make service in any of the foregoing manners, then

such notice shall be served in such manner as the court or judge may direct." The petitioner's consent to the form of service adopted gave the service complete vitality (*Matter of Bradford Woolen Corp.* [*Freedman*], 189 Misc. 242; *Matter of Merger Fabric, Inc.* [*Coill-Shuman Co.*], 74 N. Y. S. 2d 76).

The respondent has made a cross motion for an order directing the petitioner to proceed with the arbitration. The petitioner does not challenge the propriety of the service of the cross motion on its attorneys rather than on it but resists the cross motion on substantially the same grounds as those urged in support of its original motion. It addresses one further contention specifically to the cross motion: that the provision of section 1450 of the Civil Practice Act, by which a contract or submission for arbitration in this State is deemed a consent to the jurisdiction of the Supreme Court to enforce the contract or submission, is unconstitutional. The petitioner, while adducing no authority in support of this contention, quotes at length from a law review article in which the opinion is expressed that the provision, as interpreted, "would not appear to be within the presently established limits for founding compulsory judicial jurisdiction upon the performance of acts within the state" (48 Col. L. Rev., 366, 383).

Aside from the reluctance of a court of first instance to pronounce a legislative enactment unconstitutional, I find myself in disagreement with the author's reasoning. Only in a limited sense, if, at all, can the jurisdiction conferred by the section be said to be compulsory. Initially the jurisdiction springs from the voluntary act of the nonresident himself who by written contract has obligated himself to arbitrate a controversy in this State. All section 1450 of the Civil Practice Act does is to infuse this undertaking with practical utility by making it enforcible in the courts of the State where the arbitration itself is to be held. In so making the local forum accessible to the parties the law merely fashions a remedy which presumably they themselves would have chosen to implement their agreement. When so understood, the deemed consent to jurisdiction becomes a true and actual consent, rather than one imposed by force of law.

Even before the enactment in 1944 of the portion of section 1450 of the Civil Practice Act under discussion (L. 1944, ch. 423) it was held that an agreement to arbitrate within a given jurisdiction is a submission to the law and courts of that jurisdiction (*Gilbert* v. *Burnstine*, 255 N. Y. 348; *Matter of Marcus A. Hey-*

*man, Inc.* [*B. E. Cole Co.*], 242 App. Div. 362). Similarly, in *Matter of Galban Lobo Co.* (*Haytian Amer. Sugar Co.*) (271 App. Div. 310) the court, without passing on the applicability of the 1944 amendment to section 1450 to a proceeding to compel arbitration under contracts made in 1941, held that the provision for arbitration in New York, was sufficient to sustain service here on an officer of a corporation organized under the law of Haiti which did not carry on business in this State. In *Prosperity Co.* v. *American Laundry Mach. Co.* (271 App. Div. 622, affd. 297 N. Y. 486) the plaintiff, a New York corporation, was held not entitled to enjoin the enforcement of a substantial award against it made by an arbitrator appointed by a court of Ohio, pursuant to a contract provision giving the parties the election to proceed to arbitration either under the law of New York or Ohio, although no personal service had been made on the plaintiff in Ohio.

As I read these decisions, they announce the principle that when parties agree to arbitrate in a named jurisdiction they in fact undertake to submit themselves to any procedures in that jurisdiction necessary to bring the arbitration to an effective conclusion. The law merely gives fuller expression to what the parties themselves fairly intended. So viewed, the agreement is in truth a consent to the jurisdiction of our courts.

The language of the Court of Appeals in *Matter of Gantt* (*Hurtado & Cia.*) (297 N. Y. 433, 439) while applied to the validity in substance of an arbitration agreement rather than to the machinery for its enforcement, nevertheless, seems to reflect a clear acceptance of the doctrine of consent to jurisdiction: '' But these parties solemnly promised to arbitrate their controversies in New York, and by case and statute the law of New York then was, and now is, that such an agreement is ' a consent of the parties thereto to the jurisdiction of the supreme court of this state to enforce such contract or submission ' (Civ. Prac. Act, § 1450 — see *Matter of Zimmerman* v. *Cohen,* 236 N. Y. 15; *Gilbert* v. *Burnstine, supra,* 255 N. Y. at p. 354).''

Moreover, it is not without significance that the only reported case in which the question appears to have been raised the constitutionality of the 1944 amendment to section 1450 was sustained on the authority of *International Shoe Co.* v. *Washington* (326 U. S. 310). (*Matter of Bradford Woolen Corp.* [*Freedman*], 189 Misc. 242, *supra.*)

The comment on the question in *Gilbert* v. *Burnstine* (255 N. Y. 348, 354–355, *supra*) is perhaps not inappropriate: '' Con-

tracts made by mature men who are not wards of the court should, in the absence of potent objection, be enforced. Pretexts to evade them should not be sought. Few arguments can exist based on reason or justice or common morality which can be invoked for the interference with the compulsory performance of agreements which have been freely made. Courts should endeavor to keep the law at a grade at least as high as the standards of ordinary ethics. Unless individuals run foul of constitutions, statutes, decisions or the rules of public morality, why should they not be allowed to contract as they please? Our government is not so paternalistic as to prevent them.''

I, therefore, conclude that the petitioner's objection to the constitutionality of section 1450 is without merit. It follows that the motion to vacate the service of the notice of arbitration should be denied and the cross motion to direct arbitration granted. Settle order.