MERRILL LYNCH, PIERCE, FENNER
& SMITH INCORPORATED,
Plaintiff,

v.

Anastasios ALEXIOU, d/b/a Tassos
Alexiou, Defendant.

No. 75 Civ. 828.

United States District Court,
S. D. New York.

July 8, 1975.

Brown, Wood, Fuller, Caldwell & Ivey,
New York City, for plaintiff; by Thom-

as J Mullaney, New York City, of counsel.

Lunney & Crocco, New York City, for defendant; by Michael J. McAllister, New York City of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendant—a resident of Greece—has moved to dismiss the complaint in this action by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") to recover the debit balance in defendant's commodities account with Merrill Lynch on the ground that the Court lacks personal jurisdiction over him. Merrill Lynch has cross-moved to stay the action and compel arbitration of the dispute before the New York Stock Exchange, pursuant to the last paragraph of the parties' Commodity Account Agreement and Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. Because of our disposition of defendant's motion to dismiss, we need not reach the merits of plaintiff's cross-motion.

The issue raised by defendant's motion to dismiss is whether, under New York's "long arm" statute—CPLR § 302(a)(1)—defendant can be said to have, by virtue of his having placed numerous buy and sell orders for certain commodities futures contracts through Merrill Lynch's London and New York offices, "transacted business" within the state of New York. Unlike most cases arising under the "transaction of business" provision of § 302 wherein a plaintiff seeks to establish personal jurisdiction over a foreign defendant by virtue of the activities in New York of some other person acting as defendant's agent, the instant case involves a situation where the agent itself is suing a foreign principal, seeking to ground jurisdiction on the basis of its own activities within New York.

The complaint—originally filed in New York Supreme Court and later removed to this Court by reason of diversity of citizenship—alleges that defendant

opened a commodities futures trading account in October, 1974 with plaintiff's London affiliate. Thereafter, as a result of trading in said account, a debit balance of $1.2 million was incurred, which plaintiff Merrill Lynch now seeks to recover. Since defendant admittedly was never physically present in New York in connection with the transactions which gave rise to this lawsuit, the only possible jurisdictional nexus between defendant and New York are the activities engaged in by plaintiff—defendant's agent [1]—at his specific request. More specifically, it is plaintiff's contention that defendant can be deemed to have "transacted business" within New York by virtue of his having instructed plaintiff—and plaintiff having carried out those instructions—to buy and sell New York Sugar 11 Contracts, which transactions can be conducted nowhere in the world except on the New York Coffee and Sugar Exchange.

Ordinarily, New York courts have been extremely reluctant to permit an agent to bootstrap himself into jurisdiction over a non-domiciliary principal by means of the agent's own activities in New York. *Haar v. Armendaris Corp.* (1st Dept., 1972) 40 A.D.2d 769, 337 N.Y.S.2d 285, *rev'd,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855; *Parke-Bernet Galleries, Inc. v. Franklyn* (1970) 26 N.Y.2d 13, 19 (n.2) (1973), *Traub v. Robertson-American Corp.,* 368 N.Y.S.2d 958 (Sup.Ct., Nassau Co., 1975) *Hertz, Newmark & Warner v. Fischman* (Civ.Ct., New York City, 1967) 53 Misc.2d 418, 279 N.Y.S.2d 97. This is because due process requires that the non-domiciliary defendant himself have had some meaningful contact with the forum state. It is essential that, before personal jurisdiction may be obtained in such circumstances, the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws". *Han-*

*son v. Denckla* (1958) 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283. New York has been extremely reluctant to find such "purposeful" availment where the defendant is claimed to have acted within the state only through the agency of the plaintiff suing him.

For example, in *Haar v. Armendaris Corp., supra,* a New York attorney sought to recover compensation for having negotiated a business deal in New York from the Delaware corporation which had specifically retained him for that very purpose. The Appellate Division sustained jurisdiction over the Delaware defendant on the ground that it had transacted business in New York through the plaintiff-attorney. As that court observed (at 769, 337 N.Y.S.2d at 287):

> "Clearly, the negotiations were by plaintiff and his associate as the agents for and in behalf of the defendant under the express provisions of the retainer. Defendant, therefore, through plaintiff and his associate as its agents, transacted business within this state within the meaning of CPLR § 302(a)(1)."

The lone dissenting Justice, although recognizing that plaintiff was a true agent, nonetheless felt constrained by footnote 2 in *Parke-Bernet Galleries, Inc. v. Franklyn* (1970) 26 N.Y.2d 13, 19, 308 N.Y.S.2d 337, 341, 256 N.E.2d 506 to conclude that in an action by an agent against his foreign principal, the acts of the agent can never be attributed to the foreign defendant for jurisdictional purposes. Thus, the dissenting Justice observed (337 N.Y.S.2d at 287–8):

> "This is not an action between defendant and a third party, but rather between plaintiff as agent for defendant and defendant-principal. In the former situation I would not hesitate to find jurisdiction, but I conclude differently under the facts of this case.

---

1. By its own affidavits submitted in opposition to defendant's motion, plaintiff characterizes itself as having acted in the capacity of defendant's agent.

This precise issue was the subject of a footnote in *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, at p. 19, 308 N.Y.S.2d 337, at p. 341, 256 N.E.2d 506, at p. 509 which reads as follows:

'2. The present case differs materially from others, relied upon by the defendant, in which we have denied jurisdiction. (See *Glassman v. Hyder*, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259; *Standard Wine & Liq. Co. v. Bombay Spirits Co.*, 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367; *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604, *supra*; *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159.) It is sufficient to point out that in each of those cases, all of which involved agents who were suing their principals, the plaintiff was relying on his own activities within the State, and not those of the defendant, as the basis for jurisdiction. In other words, in no one of these cases had the defendant himself engaged in purposeful activity within the State nor had the cause of action arisen out of transactions with third parties conducted through an agent.' "

The Court of Appeals unanimously reversed the finding of jurisdiction "on the dissenting opinion of the Appellate Division". 31 N.Y.2d 1040, 342 N.Y.S. 2d 70, 294 N.E.2d 855.

It seems to us that *Haar* is dispositive of this motion. This can be illustrated by comparison of the facts in *Haar* and those at bar on the one hand, with those, on the other hand, in *Parke-Bernet*, the case which the *Haar* court found controlling.

Here, and in *Haar*, defendant engaged plaintiff to act as his agent to perform work which could only be done in New York (here, trading in a certain contract which exists only in New York and in *Haar*, negotiating a contract with a corporation situated in New York). Those factors were also present in *Parke-Bernet*. However, defendant in *Parke-Bernet* had directed plaintiff to establish an open telephone line to be available exclusively to him during the entire course of a certain auction, and had prevailed upon plaintiff to assign to him a specific employee (one Nash) to do his bidding exclusively during the course of the auction. By the use of this telephone line and employee, defendant substantially affected the outcome of the auction as to the two paintings he eventually purchased. Citing both the activity in influencing the course of the auction and the "borrowed servant" status of Nash, the Court of Appeals found that defendant had "transacted business" within the state.

By contrast, there is no claim here that plaintiff set up any particular telephone line for defendant's exclusive use. On the contrary, all plaintiff is claimed to have done was allow defendant to use one of its regular telephones for as long as it took to consummate the sale of the contracts in question.[2] Nor is there any claim that such sale had any significant effect on the day's activity on the Exchange floor. Finally, it is not claimed that any of the employees of plaintiff necessary to consummate the sale were exclusively assigned to defendant for any specified period of time. As a result, we are constrained to find that defendant did not "transact business" within the state, within the meaning of CPLR § 302(a)(1), as authoritatively interpreted by the New York Court of Appeals.

This result is subject to the criticism leveled against the *Haar* doctrine by Dean McLaughlin in his *Practice Commentary*, McKinneys CPLR § 302

---

2. Although defendant apparently initiated numerous transactions in his account with plaintiff, plaintiff has chosen to focus on one particular sale of New York Sugar 11 contracts as a basis of jurisdiction, in which defendant utilized a telephone located in the office of plaintiff's London office to place his sell order.

(1974–75 Pocket Part, pp. 13–14). *See also* Note, *New York's Long-Arm Jurisdiction: The Case for the Agent-Plaintiff*, 41 Brooklyn L.Rev. 625 (1975). It also seems inconsistent with the result which would be reached in the District of Columbia. *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.* (May 23, 1975) (43 U. S.L.W. 2507). However, we are bound by the law of New York and *Haar* is the authoritative expression of that law. *See Mullaney v. Wilbur* (June 9, 1975) —— U.S. —— at ——, 95 S.Ct. 1881, 44 L. Ed.2d 508.

Defendant's motion to dismiss for lack of personal jurisdiction is, accordingly, granted and the complaint dismissed without prejudice.[3]

---

3. Long after this motion was *sub judice*, plaintiff submitted a supplemental memorandum of law which raised—for the first time—the argument that an agreement to arbitrate in the State of New York is a consent by the parties to personal jurisdiction in New York. See, *e. g., Matter of Liberty Country Wear [Riordan Fabrics Co.]* (Sup. Ct., N.Y.Cty., 1950) 197 Misc. 581, 96 N.Y.S. 2d 134. Because of the untimeliness of the memorandum, we need not consider the points raised therein. However, because of the possibility that such points might be meritorious, the defendant's motion to dismiss is granted without prejudice to plaintiff's rights, if any, to seek appropriate relief under the CPLR.