Leo Brown, J.
This is an application pursuant to CPLR 7503 through which the petitioner seeks to stay arbitration on the grounds (1) that the respondents have not satisfactorily established the uninsured status of the other vehicle involved in an accident with them, and (2) that the respondents have failed to serve itemized medical statements and documentary proof of all items of special damage and to submit themselves to oral or physical examinations as required by the conditions of the insurance agreement between the parties.
It appears that on July 30, 1969 respondents sustained personal injuries when an auto in which they were riding collided *311 with a vehicle owned and operated by Charles Devon Nixon and bearing a North Carolina license plate. On August 8, 1969, the North Carolina Department of Motor Vehicles informed respondents that insurance coverage on the Nixon vehicle had been terminated effective April 3, 1969 and that, according to the department’s records, the vehicle was uninsured on July 30, 1969. On August 11, 1969, the respondents accordingly notified their own insurance carrier, the petitioner herein, of their intention to make a claim against it under the “New York State Automobile Accident Indemnification ” indorsement of their policy. The petitioner, acknowledging receipt of this notice, in turn forwarded standard claim forms to respondents to be completed by them and returned. To date, respondents have not complied with petitioner’s request for the information sought by the forms forwarded to them.
On November 21, 1969, the respondents served upon the petitioner by certified mail, return receipt requested, a written demand for arbitration containing the 10-day caveat provision of OPLB 7503 (subd. [c]). This was received by the petitioner on November 24, 1969. The petitioner thereupon served upon the respondents, also by certified mail, a notice and petition for a stay "of arbitration. These papers were mailed on December 3, 1969, and respondents received them several days thereafter.
OPLB 7503 (subd. [c]) provides that if a party served with a demand for arbitration as provided therein, containing a 10-day time limitation, fails to apply for a stay of arbitration ‘ ‘ within ten days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with * * *. Such notice shall be served in the
same manner as a summons or by registered or certified mail, return receipt requested.” Bespondents contend that this 10-day period is measured from the date upon which the demand for arbitration was mailed, November 21, 1969, to the date upon which the notice and petition to stay arbitration were actually received by the respondents, some time after December 3, 1969. Bespondents thus oppose petitioner’s application on the ground that service of its notice and petition was untimely.
The issue here presented — how to measure the 10-day time period prescribed by OPLB 7503 — is in some respects already settled by decisional law. It has been held that the 10-day period within which the petitioner must serve a notice and petition for. a stay must be measured from the date upon which it receives the demand to arbitrate, not from the date of its mailing. (Monarch Ins. Co. v. Pollack, 32 A D 2d 819.) As the court said (p. 820): “ when CPLR 7503 (subd. [c]) states that an applica *312 tion to stay arbitration must be made by the party served ‘ within ten days after service upon Mm of the notice ’ (emphasis supplied), it means within 10 days of his receipt of the notice ”. So the present petitioner, having received the demand to arbitrate on November 24, had until December 4 to serve its notice and petition for a stay of arbitration. (See, also, General Construction Law, § 20.)
The question that remains is — when is the application for a stay deemed “served” under CPLR 7503? Is it the date of mailing by the petitioner or the date of receipt by respondents ?
Service of papers in a pending action is governed by CPLR 2103, which provides that service by mail shall be complete upon mailing, but the rule enunciated by this statute is not applicable to a notice and petition to stay arbitration. (Monarch Ins. Co. v. Pollack, supra.) The rationale that supports this conclusion is that CPLR 2103 applies only to the service of papers in a “pending” action or proceeding and under CPLR 7503 there is no action or proceeding pending until petitioner serves its petition to stay arbitration. (Monarch Ins. Co. v. Pollack, supra.) This reasoning driven to its logical conclusion, classifies service of an application to stay arbitration as a jurisdictional condition precedent to the commencement of a special proceeding in much the same way as the service of a summons is to the commencement of an action. (See CPLR 304.)
In several recent decisions (Matter of All City Ins. Co. [Mikell], N. Y. L. J., Feb. 16,1970, p. 16, col. 1; Matter of Knickerbocker Ins. Co. [Gilbert], N. Y. L. J., Feb. 16,1970, p. 16, col. 1; State-Wide Ins. Co. v. Harrington, N. Y. L. J., Dec. 4,1969, p. 16, col. 7; Matter of Finest Rest. Corp. [L & A Music Co.], 52 Misc 2d 87), it was held that the jurisdictional nature of the notice and petition to stay arbitration requires a finding that service of the application to stay is complete on the date of receipt and not on the date of mailing. It was further concluded in two of these decisions that nothing short of actual delivery and receipt within 10 days will give the court jurisdiction of the parties and the proceeding (Matter of Knickerbocker Ins. Co., supra; State-Wide Ins. Co. v. Harrington, supra).
On the other hand, the courts in Matter of All City Ins. Co. (supra) and Matter of Finest Rest. Corp. (supra) indicate that either actual delivery or the first attempt at delivery by the post office is sufficient to constitute service of the application for a stay. This position, however, is inconsistent with the basic holding of those courts, for it seems clear that if service of the notice and petition is, as the courts held, a jurisdictional requisite, then an attempt at delivery by the postal authorities *313 is as incomplete a mode of service as is deposit of the papers in a mail box.
None of these four cases gives consideration to the very fundamental provision of CPLR 7503 (subd. [c]) which provides a party seeking to stay arbitration with optional means of effecting service, as follows: ‘ ‘ Such notice shall be served in the same manner as a summons or by registered or certified mail, return receipt requested.” To hold that a party utilizing the option to serve by certified or registered mail must act so expeditiously that receipt of the notice is assured before the expiration of 10 days so negates the intended purpose of the option granted by the statute as to render it a futile gesture on the part of the Legislature. A petitioner utilizing service by mail would be placed under an overwhelming burden. An application for a stay placed in the mail as shortly as two days after receipt of a demand for arbitration could through an unforeseen delay in mail delivery, fail to be delivered until after the expiration of 10 days. Delivery and receipt of certified or registered mail with a return receipt required could effectively be made impossible by a claimant who, through innocence or design, decides to take a three-week vacation beginning on the date that he mails the demand for arbitration. A petitioner faced with such foreseeable consequences would be foolhardy indeed to utilize anything but personal service of a notice and petition to stay arbitration. This is precisely what the Legislature intended to avoid by giving an alternative to personal service in order to facilitate the commencement of a special proceeding involving arbitration. The Legislature could just as easily have remained silent as to the manner of service and a petitioner would then have been subject to CPLR 403 (subd. [c]) (see, also, CPLR 103, subd. [b]) which require that a notice and petition be served in the same manner as a summons in an action.
This situation is not much different from that presented by the service of a notice of claim under section 50-e of the General Municipal Law within 90 days from the accrual of a claim. (Cf. Matter of Sellers, 20 A D 2d 350; Matter of Danielson v. MVAIC, 22 Misc 2d 943.) Similarly, that statute provides for an optional means of service of a notice of claim, either personally or by registered mail. Also similarly, the requirement that a notice of claim be served within 90 days after the occurrence of an event is a jurisdictional condition precedent to the commencement of an action in the same way as is service of a summons. (Barchet v. New York City Tr. Auth., 20 N Y 2d 1, 6.) It has been held that since section 50-e of the General Municipal Law *314 optionally permits service of a notice of claim by mail, service is effected on the date of mailing and not on the date of the receipt of the notice. (Desroches v. Caron, 11 Misc 2d 838.) In Desroches, the court seems to have reached its conclusion, first, as an attempt to effectuate the intent of the Legislature in providing optional means of service and, secondly, on the basis of the longstanding common-law procedural rule that service by mail is deemed completed on the date of mailing and not on the date of receipt. (See Jackson & Perkins Co. v. Rose Fair, 278 App. Div. 890; Anthony v. Schofield, 265 App. Div. 423; Schraub v. Landes, 31 Misc 2d 817; Schwartz v. Linington, 18 N. Y. S. 879; Radcliff v. Van Benthuysen, 3 How. Prac. 67; Jacobs v. Hooker, 1 Barb. 71.)
Accordingly, the court finds that service of the instant petition was effected on December 3, 1969, the day it was mailed, and is therefore timely.
' [Balance of opinion omitted as not of general interest.]