Breitel, J.
The issue is whether service by mail of a notice of application to stay arbitration is effected by posting or receipt. CPLR 7503 (subd. [c]) authorizes service by registered or certified mail, return receipt requested, and fixes a limit of 10 days after the notice to arbitrate for such service. In this proceeding by the insurer to stay arbitration, the claimant *60 argues that service is not complete until the notice to stay arbitration is received. Petitioner insurer counters that posting within the 10-day period is sufficient.
The Supreme Court held that, although the notice to stay arbitration was mailed on the tenth and last day, its service was not effective until delivery the following day. The Appellate Division affirmed, two Justices dissenting.
A reading of the statute, amplified by, its well-documented legislative history, suggests that service is timely if the notice to stay is posted within the 10-day period. The order of the Appellate Division should, therefore, be reversed.
CPLE 7503 (subd. [c]) provides: “Notice of intention to arbitrate. A party may serve upon another party a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and stating that unless the party served applies to stay the arbitration within ten days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time. Such notice shall be served in the same manner as a summons or by registered or certified mail, return receipt requested. An application to stay arbitration must be made by the party served within ten days after service upon him of the notice or he shall be so precluded. Notice of such application shall be served in the same manner as a summons or by registered or certified mail, return receipt requested.” The failure to give notice to stay, it is emphasized, bars assertion of inarbitrability in subsequent judicial proceedings.
In March, 1966, claimant Gilbert was involved as a passenger in an automobile accident. The automobile, driven by her husband, was owned by one Merritt, an insured of appellant Knickerbocker. In a plenary action for tort by claimant against Merritt, the latter impleaded Knickerbocker. Merritt has asserted, in defense of the claim against him, that the husband had driven the vehicle outside the physical area and beyond the use for which he had granted permission. Claimant, as a further protective measure, filed a notice of claim under the uninsured motorist’s clause in Merritt’s Knickerbocker policy. *61 On November 28, 1969, claimant mailed Knickerbocker a notice of intention to arbitrate her claim; and it was received by the insurer on December 1, 1969. The insurer responded, on December 11, 1969, 10 days later, by posting a certified letter, return receipt requested, including a notice and the instant application for a stay of arbitration. The letter, addressed to claimant’s attorney, was received on December 12, 1969, 11 days after delivery by mail to the insurer of the notice to arbitrate.
Thus the issue is put squarely whether the insurer is barred from asserting inarbitrability, now or in subsequent judicial proceedings, because its notice to stay arbitration was not delivered until the eleventh day after it had received a notice to arbitrate.
There have been diverse views and results in cases treating with the issue. Courts requiring receipt of the notice to stay arbitration within 10 days have reasoned that the statute must be construed strictly to implement the purpose of speedy settlement. Influential, too, has been the obvious but superficial analogy to the notice to arbitrate which has been said to require receipt. (See, e.g., Matter of All City Ins. Co. [Mikell], N. Y. L. J., Feb. 16, 1970, p. 16, col. 1; State-Wide Ins. Co. v. Harrington, N. Y. L. J., Dec. 4, 1969, p. 16, col. 7; Matter of Finest Rest. Corp. [L & A Music Co.], 52 Misc 2d 87, 89; cf. Matter of Jonathan Logan, Inc. [Stillwater Worsted Mills], 31 A D 2d 208, 211, affd. 24 N Y 2d 898, involving not a mailed notice but an order to show cause with a return day beyond the 10-day limit.) Courts holding the 10-day limit satisfied by posting alone have pointed to the shortness of time for critical decision, compounded if receipt is required (State-Wide Ins. Co. v. Mingione, 65 Misc 2d 310; Matter of Glens Falls Ins. Co. v. Anness, 62 Misc 2d 592; cf. Matter of Liberty Mut. Ins. Co. [Keane], N. Y. L. J., March 6, 1967, p. 21, col. 4).
Historically, by design and in practice, compliance with the 10-day limit compelled diligence and procedural orderliness. The 10-day limit was adopted in 1937, when the arbitration itself was deemed a special proceeding, incepted by the notice to arbitrate, and the application for a stay was a motion made in a pending proceeding (see Civ. Prac. Act, § 1458, subd. 2, as amd. by L. 1937, ch. 341, § 1459; 8 Weinstein-Korn-Miller, *62 N. Y. Civ. Prac., par. 7502.04; cf. Matter of Beverly Cocktail Lounge [Emerald Vending Mach.], 45 Misc 2d 376, 378; Matter of Shine’s Rest. [Waiters Union], 20 Misc 2d 737). In that context the time limit closed a loophole which until then had allowed a party both to participate in the arbitration and, should he lose, still defeat confirmation of the award by, for the first time, asserting inarbitrability. (See H. H. Nordlinger, Twenty Years of Statutory Development of Arbitration in New York, 17 N. Y. U. L. Rev. 517, 523-524; see, also, 8 Weinstein-Korn-Miller, op. cit., supra, par. 7503.25.)
The draftsmen of CPLR, in eliminating the provision that arbitration was a special proceeding, did not intend to change the method of service of the notice to stay arbitration, a method entirely satisfactory within the framework of arbitration practice. Special proceeding or not, the arbitration is initiated by a notice or demand for arbitration. Thus the Advisory Committee’s Fourth Preliminary Report provided that a notice to arbitrate, as the first step in the matter, must be served ‘ ‘ in the same manner as a summons in an action ’ ’, but that an application to stay arbitration ‘ ‘ made by the party served shall be made by motion” (N. Y. Legis. Doc., 1960, No. 20, § 17.3, subd. [c], pp. 80-81). The committee explained that absent a liberalizing provision with respect to the method of serving the notice to stay, the change in the status of an arbitration from a special proceeding might inadvertently entail that the notice to stay be served in the same manner as a summons, a result unnecessary and undesirable. It was said (p. 77) explicitly and directly to the point: “ There is no need for such service since the other party has required the motion by his own notice, and consequently the proposed provision expressly states that the application shall be by motion—like a motion in any action. It thus invokes the general procedures for method and time of service contained in proposed rules 32.3 and 33.5(b); this replaces the requirement in present section 1458(2) that service be made personally or by registered mail.” The proposed rule 32.3, mentioned in the last-quoted comment, authorized the service of papers in a pending action by posting to an attorney, and was, therefore, substantially similar to CPLR as later enacted covering the service of papers *63 in a pending action (CPLR 2103, subd. [b], par. 2; see Second Report, N. Y. Legis. Doc., 1958, No. 13, pp. 176-177).
The committee evolved in its Fifth Report the final wording of the proposed statute covering the notice to stay arbitration, and this wording was enacted as the last three sentences of CPLR 7503 (subd. [c]). It explained the changes from the previous report as follows: ‘ ‘ provision has been made for service of both the notice of intention to arbitrate and notice of application for a stay by registered or certified mail, return receipt requested, on the suggestion of a number of bar associations that this conforms with actual present practice. The latter portion of the subdivision has also been expanded for clarification with no change in meaning” (N. Y. Legis. Doc., 1961, No. 15, p. 183).
The key words are ‘1 with no change in meaning. ’ ’ For that qualification to be true, the notice to stay arbitration must remain assimilated to a paper served in a pending action, namely, one which could be served by posting to an attorney, and did not require receipt within the time limit to be effective.
Policy reasons support the analysis and the conclusion. Requiring receipt by mail within the all-too-brief 10 days to be effective as service within the time limit defeats the purpose of encouraging mailing (see Matter of Glens Falls Ins. Co. v, Anness, 62 Misc 2d 592, 593-594, supra). Indeed, mailing may not only be highly desirable but essential, if it turns out that it is impossible to effect personal service within the 10 days allowed to make a decision and serve the notice on a non-cooperative claimant. On the other hand, service effective on posting alone works no injustice. The seeker of arbitration must become aware of the notice to stay when the mailed notice is received, shortly after the tenth day, for which he must sign the receipt. In the event of miscarriage in the mails and the return receipt, he will learn soon enough when he attempts to enter into arbitration or begins a proceeding to compel arbitration, and is met with protest that the notice to stay had been timely mailed. In any event, there can be no surprise because the seeker of arbitration knows or should know that a notice to stay may follow shortly upon the notice to arbitrate.
Nor does this view make for an unfair or intrinsically inconsistent practice between the notice to arbitrate and the notice to *64 stay. The notice to arbitrate does not start the time to respond until receipt, for otherwise the time for the adversary to serve his notice to stay would be foreshortened, namely, on the inception of the arbitration. In the way contemplated by the draftsmen of CPLR and adopted now, the adversary gets a full 10 days, and no more, to decide and to act on his decision to seek a stay by not foreshortening his time at the beginning or cropping his time at the end. Thus, both parties may avail themselves of the convenience (or necessity) of mailing in lieu of personal service without paying the penalty of shortening the time either for action or decision. The price for this fairness is whatever short time it takes for the mail to be delivered, a matter outside the control of persons who use but do not run the mails. Significantly, too, this would conform to the practice under the United States Arbitration Act, namely, service by posting upon an attorney (U. S. Code, tit. 9, § 6, and see, re: service of motions, Fed. Rules Civ. Pro., rule 5, subd. [b]).
As a subsidiary point, claimant argues that the insurer’s notice was not-addressed or delivered to claimant, but, instead, to her attorney. The notice, however, listed claimant as an addressee and the accompanying copy of the petition disclosed that the notice and petition were directed to claimant. It is not alleged that there was no actual notice. What is more important her lawyer received the notice directed to claimant.
True, it has been held that service upon an attorney alone cannot be effective because the notice to stay arbitration begins a judicial proceeding, which, indeed, it does (Monarch Ins. Co. v. Pollack, 32 A D 2d 819; Matter of State-Wide Ins. Co. [Lopez], 30 A D 2d 694). This may be a narrow logical conclusion within traditional litigation concepts, but it ignores the special nature of arbitration. It is old law that arbitration agreements may provide for methods of service other than in comm on -law form appropriate to litigation (Prosperity Co. v. American Laundry Mach. Co., 297 N. Y. 486; Gilbert v. Burnstine, 255 N. Y. 348, 355-356; Matter of Bauer [MVAIC], 31 A D 2d 239, 241-243). Consequently, it is more broadly logical and much more salutary to regard the service of the notice to arbitrate as importing a consent to the procedure associated with and provided for a motion to stay arbitration, invited by a notice to arbitrate. For that reason, the rule in the Berner *65 case (supra), viewing the notice to stay as invited by the notice to arbitrate, is preferable to the restrictive view taken in the Monarch and State-Wide cases (supra).
Moreover, the legislative history of CPLR 7503 (subd. [c]) confirms that the thinking of its draftsmen was based on the consent to jurisdiction implied by law and in fact by a notice or demand for arbitration. The cited comments and draft stages reveal that service of .the notice to stay arbitration was intended to be effective if posted to an attorney who has served a notice to arbitrate on behalf of the claimant, as distinguished from service on the claimant himself (see Fourth Report, p. 77, supra; Second Report, proposed rule 32.3, pp. 176-177, supra). Hence, the insurer’s notice to stay arbitration was properly served upon claimant’s attorney, who had served a notice to arbitrate on behalf of claimant.
Legislative history aside, in light of the earlier practice under the Civil Practice Act, the naming of claimant in the insurer’s petition and notice to stay, and the absence of prejudice to claimant, insurer’s error was an irregularity which may and should be disregarded (see CPLR 2001; cf. Matter of MVAIC v. Marrero, 17 N Y 2d 342, 344; City of Mount Vernon v. Best Development Co., 268 N. Y. 327, 329-331). Moreover, there was, in effect, an appointment of claimant’s attorney as agent for service by incorporation in the insurance contract of the rules of the American Arbitration Association (see Matter of Bauer [MVAIC], supra).
It may be noted, in passing, that in discussing a notice to arbitrate, served by mail, there has been no assertion that receipt is required to effect service. Some courts, however, have suggested or implied that to be the rule (see, e.g., Monarch Ins. Co. v. Pollack, 32 A D 2d 819, 820, supra; Matter of Glens Falls Ins. Co. v. Anness, 62 Misc 2d 592, 593, supra; Matter of Finest Rest. Corp. [L & A Music Co.], 52 Misc 2d 87, 89, supra; Matter of Beverly Cocktail Lounge [Emerald Vending Mach.], 45 Misc 2d 376, 377, supra-, see, also, this case, 35 A D 2d 21, 22; but cf. Cosmopolitan Mut. Ins. Co. v. Moliere, 31 A D 2d 924). It is dubious that so broad a rule is necessary. Receipt of the notice to arbitrate is significant only for the purpose of starting the adversary’s time to. serve his notice to stay. On the other hand, for purposes of the time limitations imposed *66 on the one seeking arbitration, he too, it would seem, should be deemed to satisfy any time limitations applicable to him if he posts his notice to arbitrate within the time limited. Obviously, the issue does not require resolution in this case.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the proceeding remitted to Supreme Court to determine the issues on the merits.
Chief Judge Fuld and Judges Scilbppi, Bergan, Jasen and Gibson concur; Judge Burke taking no part.
Order reversed, without costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.